Brian S. King, #4610
Brent J. Newton, #6950
Nediha Hadzikadunic, #15851
**BRIAN S. KING, P.C.**
336 South 300 East, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
nediha@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| E. W., and I. W.,<br><br>        Plaintiffs,<br><br>vs.<br><br>HEALTH NET LIFE INSURANCE COMPANY, and HEALTH NET of ARIZONA INC.<br><br>        Defendants. | COMPLAINT<br><br>Case Number 2:19-cv-00499 CMR |

Plaintiffs E. W. ("E.") and I. W. ("I."), through their undersigned counsel, complain and allege against Defendants Health Net Life Insurance Company, and Health Net of Arizona Inc. (collectively "Health Net"), as follows:

**PARTIES, JURISDICTION AND VENUE**

1. E. and I. are natural persons residing in Maricopa County, Arizona. E. is I.'s father.

2. Health Net Life Insurance Company and its subsidiary Health Net of Arizona Inc. are insurance companies and acted as insurers and claims administrators for the health

1

    insurance plan providing coverage for the Plaintiffs, ("the Plan") during the treatment at issue in this case.

3. The Plan is a fully-insured employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). E. was a participant in the Plan and I. was a beneficiary of the Plan at all relevant times.

4. I. received medical care and treatment at Uinta Academy ("Uinta") from September 12, 2016, to December 14, 2017. Uinta is a residential treatment facility located in Utah, which provides sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

5. Health Net Life Insurance Company, acting in its own capacity, or through its subsidiaries and affiliates Health Net of Arizona or MHN Services denied claims for payment of I.'s medical expenses in connection with her treatment at Uinta. This lawsuit is brought to obtain the Court's order requiring the Plan to reimburse E. for the medical expenses he has incurred and paid for I.'s treatment.

6. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

7. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, because Health Net does business in Utah, and because the treatment at issue took place in Utah. Finally, in light of the sensitive nature of the medical treatment at issue, it is the Plaintiffs' desire that the case be resolved in the State of Utah where it is more likely their privacy will be preserved.

8. The remedies the Plaintiffs seek under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, and pursuant to 29 U.S.C. §1132(a)(1)(B), for appropriate equitable relief under 29 U.S.C. §1132(a)(3) based on the Defendants' violation of the Mental Health Parity and Addiction Equity Act of 2008 ("MHPAEA"), an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### I.'s Developmental History and Medical Background

9. I. moved to Arizona from Utah in 2012 and subsequently had difficulty making and keeping friends. After the move, I. became more withdrawn, her grades dramatically dropped, and she started self-harming by cutting. I. was diagnosed with Attention Deficit Hyperactivity Disorder ("ADHD") which made it hard for her to focus and stay on task. E. and I.'s mother described I. as having a difficult temperament since she was a toddler.

10. I. struggled with insecurity and she constantly compared herself to others. She suffered from Anorexia and Bulimia and restricted food and purged to the point that she was frequently dizzy and almost lost consciousness on numerous occasions.

11. In the seventh grade, I. was taken in for an evaluation by Dr. PeBenito at the Melmed Center. Dr. PeBenito mentioned I.'s frequent emotional dysregulation and difficulty. I. was given medication and was put on an individualized education plan at school. I. continued to struggle with anxiety and depression as she got older and her cutting on her arms and legs intensified.

12. These behaviors continued as I. entered high school and she was placed on an individualized education plan there as well. She attempted outpatient therapy but it was largely ineffective. I. invented stories such as telling one of her friends that she was abused at home and then hitting herself in the face so that the story appeared true. The police were called and eventually I. confessed to making the story up.

13. I. attempted suicide on five separate occasions in the year 2015 through various means such as medication overdoses, drinking hand sanitizer, or intentionally ingesting peanut butter even though she was aware that she had a fatal allergy. I. was hospitalized after these incidents and following the final attempt she was admitted to an acute inpatient treatment facility in Utah called ViewPoint Center. I.'s treatment team at Viewpoint Center recommended that she be placed in a residential treatment center after she was discharged.

**Uinta**

14. I. was admitted to Uinta on September 12, 2016, with Health Net's approval.

15. In a letter dated March 1, 2017, Health Net denied payment for further treatment after February 22, 2017. The Plaintiffs were not initially provided with a copy of this letter. The reviewer gave the following justification for the denial:

> …The requesting provider/facility has asked for the above referenced service. The service requested is being denied pre-service on 03/01/17 for services provided on 02/23/17 by MHN because it does not meet InterQual criteria and guidelines and in accordance with the terms and conditions of your Evidence of Coverage, Exclusions & Limitations section.
>
> Specifically, MHN uses McKesson InterQual medical necessity standards to help decide if continued stay at the Adolescent Mental Health Residential Treatment Center (RTC) level of care is needed. These standards state that there must be reports within the last week of physical altercations, sexually inappropriate behavior, evidence of worsening depression, runaway behavior, self-mutilation, or suicidal or homicidal ideation. Based on the clinical information provided to

4

> MHN, your daughter is not having any of these symptoms or behaviors. It is reported that she has learned many healthy coping skills and is working on strategies to control her anxiety. She has been opening up significantly in therapy and is beginning to address core issues related to her poor self-image and thinking errors. Therefore, this request for ongoing treatment at the Adolescent Mental Health RTC level of care does not meet medical necessity criteria.
>
> If you choose to remain in the above named treatment, you will be financially responsible for all costs for the services and care you receive beginning on 02/23/17.
>
> Instead of the care requested, we recommend the following services for you: Adolescent Mental Health Partial Hospital Program. …

16. I.'s mother submitted a letter to Health Net dated May 10, 2018, claiming that she had received no notice from Health Net that payment for I.'s treatment had been denied. She wrote that without any denial letter from Health Net, she had no documented information as to how the determination to deny care was made and was unable to properly appeal any adverse determination. She requested that Health Net review I.'s medical records and provide her with a valid letter determination letter.

17. In a letter dated June 8, 2018, Health Net sent the Plaintiffs a letter which included the initial March 1, 2017, denial letter.

18. In a letter dated July 16, 2018, Health Net upheld the denial of payment for I.'s treatment at Uinta. The reviewer, an unnamed Arizona physician licensed in Obstetrics and Gynecology gave the following justification for the denial:

> …InterQual criteria standards state that there must be reports within the last week of either physical altercations, sexually inappropriate behavior, evidence of worsening depression, runaway behavior, self-mutilation, suicidal or homicidal ideation. Based on the clinical information provided to MHN, your daughter was not having any of these symptoms or behaviors. Therefore, this request for ongoing treatment at the Adolescent Mental health RTC level of care did not meet medical necessity criteria. …

5

19. On November 14, 2018, I. requested that the denial of payment for her treatment be evaluated by an external review agency. I. wrote that through her treatment at Uinta, she was able to overcome many of her negative behaviors and that without the care that she had received at Uinta, she would not have been able to benefit from outpatient therapy, "as I was too deeply entrenched in the obsessive thoughts of my depression and anxiety." She stated that it was due to the interventions that she had received at Uinta that she was able to successfully move forward with her life.

20. She wrote that residential treatment was not intended to treat individuals suffering from acute symptomology such as an imminent risk of suicide, homicide, or psychosis. She argued that requiring acute symptomology for a sub-acute level of care was not supported by generally accepted standards of medical practice. I. requested that the external review agency not utilize the InterQual criteria utilized by Health Net in its review as they were incongruent with generally accepted standards of mental health care and incorrectly mandated acute symptomology for a non-acute level of care.

21. I. stated that MHPAEA compelled Health Net to offer mental health and substance use treatment "at parity" with comparable levels of medical or surgical treatment such as skilled nursing facilities. She argued that MHPAEA prohibited non quantifiable treatment limitations, and that because Health Net required acute symptomology for her mental health care, it would have also had to require acute symptoms for treatment in a subacute medical facility in order to be in compliance with MHPAEA.

22. She included a copy of her medical records with the appeal. These records showed that while in treatment she continued to struggle with negative self image, desires to self-harm, desires to restrict food intake, suicidal thoughts, anxiety, panic attacks, attention

seeking behaviors such as pretending to faint, and she also used Benadryl and cough syrup to get high.

23. I. requested that in the event that the claim was not paid, that Health Net provide her with a copy of all documents under which the Plan was operated including the Certificate of Coverage, any insurance policies in place for the benefits she was seeking, any administrative service agreements that existed, the Plan's mental health and substance abuse criteria, the Plan's skilled nursing and rehabilitation facility criteria, and any opinions from any physician or other professional regarding the claim. (collectively the "Plan Documents")

24. In a letter dated December 28, 2018, Health Net informed the Plaintiffs that the external review organization had upheld the denial. The letter stated in part:

> Health Net's Appeals and Grievance Department received a recommendation from the ADOI, which states in part, "…Pursuant to A.R.S. § 20-2537 (F), "…Per InterQual criteria 2016.3 Child and Adolescent Psychiatry Criteria Residential Treatment Center, extended stay there must be documentation within the last week of either physical altercations, sexually inappropriate behavior, evidence of worsening depression, runaway behavior, self-mutilation, suicidal or homicidal ideation. Based on the information provided in the chart,[1] the Insured did not display any of these behaviors within the specified time. Furthermore, she was not noted to be psychotic, manic, suicidal, homicidal or having symptoms of a major depressive episode. There is no documentation that the Insured had significant ongoing medical problems that required hospital-based interventions or the Insured had functional impairments. There is no evidence in the chart of any significant side effects from medication. The Insured was not reported to have any significant withdrawal symptoms from substances, nor any significant deterioration or emergence of new symptoms during her continuing inpatient hospital stay. For these reasons, the Health Plan's determination should be upheld.

25. On March 11, 2019, I.'s mother sent a letter to Health Net, the external review organization Maximus Federal Services, the Arizona Department of Insurance, and the

---

[1] The external reviewer refers multiple times to "the chart." It is unclear what information this document contained, or why the reviewer referred to a chart instead of the Plaintiffs' appeal letters and their accompanying documentation.

7

Arizona Attorney General. I.'s mother expressed her disagreement with the external reviewer's decision, and the use of acute care guidelines to evaluate I.'s subacute treatment. She accused Health Net of "never even bother[ing] to respond" to her appeal.

26. She wrote that this use of acute care criteria for subacute care violated MHPAEA, because it did not conform with generally accepted standards of care when reviewing residential level mental health or substance abuse claims.

27. The Arizona Department of Insurance responded to I.'s mother's March 11, 2019, letter with a March 18, 2019, letter which stated that their obligation to weigh in on the matter ended after the external reviewer made its decision.

28. The Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

29. The denial of benefits for I.'s treatment was a breach of contract and caused E. to incur medical expenses that should have been paid by the Plan in an amount totaling over $145,000.

30. Health Net failed to provide the Plaintiffs with a copy of the Plan Documents, including any medical necessity criteria for mental health and substance use disorder treatment and for skilled nursing or rehabilitation facilities in spite of I.'s request.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

31. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Health Net, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing

solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. §1104(a)(1).

32. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with the Plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

33. Health Net and the agents of the Plan breached their fiduciary duties to I. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in I.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries and to provide a full and fair review of I.'s claims.

34. The actions of Health Net and the Plan in failing to provide coverage for I.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity criteria.

## SECOND CAUSE OF ACTION

### (Claim for Violation of MHPAEA Under 29 U.S.C. §1132(a)(3))

35. MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and MHPAEA.

36. Generally speaking, MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

37. MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant

treatment limitations applied to substantially all medical and surgical benefits and also makes illegal separate treatment limitations that are applicable only with respect to mental health or substance use disorder benefits. 29 U.S.C.§1185a(a)(3)(A)(ii).

38. Impermissible nonquantitative treatment limitations under MHPAEA include, but are not limited to, medical management standards limiting or excluding benefits based on medical necessity, restrictions based on geographic location, facility type, provider specialty, and other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. §2590.712(c)(4)(ii)(A) and (H).

39. Specifically, the Plan's medical necessity criteria for intermediate level mental health treatment benefits are more stringent or restrictive than the medical necessity criteria the Plan applies to intermediate level medical or surgical benefits.

40. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for I.'s treatment include sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities. For none of these types of treatment does Health Net exclude or restrict coverage of medical/surgical conditions based on medical necessity, geographic location, facility type, provider specialty, or other criteria in the manner Health Net excluded coverage of treatment for I. at Uinta.

41. The actions of Health Net and the Plan requiring that I. satisfy acute care medical necessity criteria in order to obtain coverage for residential treatment violates MHPAEA because the Plan does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria in order to receive Plan benefits.

42. Health Net and the Plan did not produce the documents the Plaintiffs requested to evaluate medical necessity and MHPAEA compliance, nor did they address in any substantive capacity the Plaintiffs' allegations that Health Net and the Plan were not in compliance with MHPAEA.

43. In this manner, the Defendants violate 29 C.F.R. §2590.712(c)(4)(i) because the terms of the Plan and the medical necessity criteria utilized by the Plan and Health Net, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied, than the processes, strategies, standards or other factors used to limit coverage for medical/surgical treatment in the same classification.

44. When Health Net and the Plan receive claims for intermediate level treatment of medical and surgical conditions, they provide benefits and pay the claims as outlined in the terms of the Plan based on generally accepted standards of medical practice. Health Net and the Plan evaluated I.'s mental health claims using medical necessity criteria that deviate from generally accepted standards of medical practice. This process resulted in a disparity where equivalent mental health benefits were denied when the analogous levels of medical or surgical benefits would have been paid.

45. The violations of MHPAEA by Health Net and the Plan give the Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. §1132(a)(3) including, but not limited to:

   (a) A declaration that the actions of the Defendants violate MHPAEA;

   (b) An injunction ordering the Defendants to cease violating MHPAEA and requiring compliance with the statute;

    (c) An order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by the Defendants to interpret and apply the terms of the Plan to ensure compliance with MHPAEA;

    (d) An order requiring disgorgement of funds obtained by or retained by the Defendants as a result of their violations of MHPAEA;

    (e) An order requiring an accounting by the Defendants of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan and Health Net insured plans as a result of the Defendants' violations of MHPAEA;

    (f) An order based on the equitable remedy of surcharge requiring the Defendants to provide payment to the Plaintiffs as make-whole relief for their loss;

    (g) An order equitably estopping the Defendants from denying the Plaintiffs' claims in violation of MHPAEA; and

    (h) An order providing restitution from the Defendants to the Plaintiffs for their loss arising out of the Defendants' violation of MHPAEA.

46. In addition, Plaintiffs are entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiffs seek relief as follows:

1. Judgment in the total amount that is owed for I.'s medically necessary treatment at Uinta under the terms of the Plan, plus pre and post-judgment interest to the date of payment;

2. Appropriate equitable relief under 29 U.S.C. §1132(a)(3) as outlined in Plaintiffs' Second Cause of Action;

3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and

4. For such further relief as the Court deems just and proper.

DATED this 16th day of July 2019.

By    <u>s/ Brian S. King</u>
      Brian S. King
      Attorney for Plaintiffs

County of Plaintiffs' Residence:
Maricopa County, Arizona