IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| E.W. and I.W.,<br><br>Plaintiffs,<br><br>vs.<br><br>HEALTH NET LIFE INSURANCE COMPANY, and HEALTH NET OF ARIZONA, INC.,<br><br>Defendants. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:19-cv-499-TC |

In 2017, Defendants Health Net Life Insurance Company and Health Net of Arizona, Inc. (collectively "Health Net") denied Plaintiffs' claim for coverage of Plaintiff I.W.'s mental health treatment at a residential treatment facility in Utah. I.W. and her father, E.W., filed suit under ERISA[1] asserting (1) a claim for recovery of benefits and (2) a claim for equitable relief based on violation of the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA). The Defendants have filed a Rule 12(b)(6) motion to dismiss.

For the reasons set forth below, the court finds that Plaintiffs have not stated a claim under MHPAEA, but they have sufficiently alleged the elements of a claim for benefits under ERISA.

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq.

1

**FACTUAL ALLEGATIONS[2]**

Plaintiff E.W. is the father of Plaintiff I.W., a teenager who for years has suffered from serious mental health and behavioral problems. From September 12, 2016, to December 14, 2017, I.W. was admitted to Uinta Academy and received mental health treatment. Uinta is a residential treatment facility in Utah providing sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

During this time, I.W. was covered by her father's health insurance through an employee welfare benefit plan governed by ERISA (the Plan). Health Net was the insurer and administrator of the Plan.

Health Net approved coverage for I.W.'s treatment through February 22, 2017, but it denied claims for coverage after that date. Despite denial of her claims, I.W. stayed at Uinta until December 14, 2017.

In a March 1, 2017 letter, Health Net denied coverage for that additional period because the "requesting provider/facility" (presumably Uinta) did not meet "InterQual criteria and guidelines." (Compl. ¶ 15, ECF No. 2.) It offered the following explanation:

> MHN [the claim reviewer] uses McKesson InterQual medical necessity standards to help decide if continued stay at the Adolescent Mental Health Residential Treatment Center (RTC) level of care is needed. These standards state that there must be reports within the last week of physical altercations, sexually inappropriate behavior, evidence of worsening depression, runaway behavior, self-mutilation, or suicidal or homicidal ideation.

(Id. (quoting Mar. 1, 2017 Ltr. denying coverage).) Applying those criteria, Health Net said that I.W.:

> is not having any of these symptoms or behaviors. It is reported that she has learned many healthy coping skills and is working on strategies to control her

---

[2] For purpose of the court's analysis under Rule 12(b)(6), the court must take all well-pled factual allegations in the complaint as true. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

>anxiety.  She has been opening up significantly in therapy and is beginning to address core issues related to her poor self-image and thinking errors.  Therefore, this request for ongoing treatment at the Adolescent Mental Health RTC level of care does not meet medical necessity criteria.

(Id.)  Health Net then recommended treatment in an "Adolescent Mental Health Partial Hospital Program."  (Id.)

In May 2018, I.W.'s mother wrote to Health Net claiming that she had not received notice that Health Net had denied payment for I.W.'s treatment.  With no denial letter, she said "she had no documented information as to how the determination to deny care was made and was unable to properly appeal any adverse determination." (Id. ¶ 16.)  She then requested that Health Net review the medical records and provide a valid determination letter.  On June 8, 2018, Health Net responded and included a copy of the March 1, 2017 denial letter.

Approximately five weeks later, Health Net sent a letter dated July 16, 2018, upholding the denial.  The reviewer of the appealed claim was "an unnamed Arizona physician licensed in Obstetrics and Gynecology." (Id. ¶ 18.)  The reviewer's justification for denial quoted InterQual criteria and provided essentially the same language Health Net used in its March 1, 2017 denial letter.

I.W. then requested that an external review agency evaluate the denial.  In that request, she described the help she received at Uinta, and she wrote that "residential treatment was not intended to treat individuals suffering from acute symptomology such as an imminent risk of suicide, homicide, or psychosis." (Id. ¶ 20.)  She further opined that "acute symptomology for a sub-acute level of care was not supported by generally accepted standards of medical practice." (Id.)  I.W. requested that the external reviewer not use the InterQual criteria because "they were incongruent with generally accepted standards of mental health care and incorrectly mandated acute symptomology for a non-acute level of care." (Id.)

As part of her appeal, she submitted a copy of her medical records. She also requested what she calls "Plan Documents":

> a copy of all documents under which the Plan was operated including the Certificate of Coverage, any insurance policies in place for the benefits she was seeking, any administrative service agreements that existed, the Plan's mental health and substance abuse criteria, the Plan's skilled nursing and rehabilitation facility criteria, and any opinions from any physician and other professional regarding the claim[.]

(Id. ¶ 23.) She sent the request, at least in part, to obtain "medical necessity criteria for mental health and substance use disorder treatment and for skilled nursing or rehabilitation facilities" to use in a claim that Health Net violated MHPAEA. (Id. ¶ 30.) Ultimately, Health Net did not provide a copy of the Plan Documents.

On December 28, 2018, Health Net sent a letter to Plaintiffs telling them the external reviewer affirmed the decision to deny coverage. According to the letter, the external reviewer used the InterQual criteria to evaluate whether I.W.'s circumstances and symptoms qualified for coverage of the treatment at Uinta. (See id. ¶ 24 (quoting external reviewer's justification for denial).)

On March 11, 2019, I.W.'s mother wrote to Health Net, the external review agency, the Arizona Department of Insurance, and the Arizona Attorney General. She complained about the external reviewer's decision and Health Net's "use of acute care guidelines to evaluate I.'s subacute treatment." (Id. ¶ 25.) This, she asserted, violated MHPAEA. But the Arizona Department of Insurance responded a week later, saying that its obligation to weigh in on the matter ended after the external reviewer made its decision.

Plaintiffs, having exhausted their pre-litigation obligations, filed suit here. They seek coverage of approximately $145,000 in medical expenses.

## ANALYSIS

### Standard of Review

Rule 8 requires that a complaint set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). If the plaintiff fails to satisfy this "notice pleading" requirement, he may be subject to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Under that rule, a party who files a motion to dismiss is entitled to dismissal if the complaint fails to state a claim upon which relief can be granted. Id.

When reviewing Defendants' Rule 12(b)(6) motion, the court must accept all well-pleaded factual allegations as true and construe them in a light most favorable to the Plaintiffs. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. The United States Supreme Court emphasized that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

To avoid dismissal, the Plaintiffs must "state a claim to relief that is plausible on its face." Id. at 678. A facially-plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id. If the plaintiff does not satisfy that standard, the court must dismiss the complaint for failure to state a cause of action under Rule 12(b)(6).

**ERISA Action for Benefits**

In their first cause of action, Plaintiffs seek reimbursement of costs they incurred for I.W.'s treatment at Uinta. As the basis for that claim, they allege that Health Net breached its fiduciary duty (in violation of 29 U.S.C. § 1104(a)(1)) because it arbitrarily and capriciously denied coverage and because it deprived them of the right to a "full and fair review" of their appeal.

Health Net asks the court to dismiss Plaintiffs' claim for two reasons. First, it contends that its "coverage denial followed widely accepted medical necessity standards of care published by InterQual," and so Plaintiffs' allegations of an arbitrary and capricious review fail as a matter of law and fact. (Mot. Dismiss at 1, ECF No. 17.) Second, Health Net maintains that Plaintiffs' "full and fair review" claim should be dismissed because their "own recitation of the record acknowledges that Health Net provided a letter to Plaintiffs explaining Health Net's denial decision, that Plaintiffs received their claim records, and that Health Net afforded Plaintiffs two levels of appeal (one by an external review agency)." (Id. at 2.)

The court concludes that Health Net is not entitled to dismissal at this stage.

**1. Arbitrary and Capricious**

In Health Net's motion, it points to the use of InterQual medical-necessity criteria and faults Plaintiffs for failing to identify in their complaint why it was arbitrary and capricious for Health Net to use those guidelines. Health Net cites to a website and a handful of cases from other jurisdictions saying that the InterQual medical-necessity criteria "are widely accepted professional standards in the industry." (Id. at 4 n.5, 9.) According to Health Net, Plaintiffs should have "identified the care criteria they contend Health Net should have applied [instead], or [explained] why I.W.'s symptoms would have warranted a continued stay at a residential

treatment center when measured against those criteria[.]" (Id. at 2.) Health Net also faults Plaintiffs for failing to "identify what specifically in [the] medical records would have resulted in a different medical necessity determination when measured against [the Plaintiffs' alternative,] unspecified standard." (Id. at 10.)

As Plaintiffs point out, deciding whether a denial was arbitrary and capricious is a fact- and record-intensive determination. To reach a decision, the court must review the administrative record, defined as "the materials compiled by the administrator in the course of making his decision." Hall v. UNUM Life Ins. Co. of Am., 300 F.3d 1197, 1201 (10th Cir. 2002).

But when reviewing the legal and factual sufficiency of claims under Rule 12(b)(6), the court is limited to the four corners of the complaint and must apply the Rule 8 pleading standard. Health Net essentially asks the court to go beyond the complaint. For example, at this early stage, the court is not in a position to accept or reject Health Net's position that its use of the InterQual criteria was not arbitrary or capricious. (Compare Compl. ¶ 20 (alleging that the InterQual criteria are "incongruent with generally accepted standards of mental health care.").) Also, if the court were to accept Health Net's contention that Plaintiffs' complaint must cite to specific instances in the medical records to support their claim, the court would be applying a stricter pleading standard than is allowed. Health Net is sufficiently on notice of the nature of Plaintiffs' "arbitrary and capricious" cause of action. That is sufficient.

### 2. **Full and Fair Review**

As for remainder of the first cause of action—the "full and fair review" claim—Plaintiffs' allegations are also sufficient. ERISA requires a benefits plan to provide claimants a full and fair review of their challenge to denial of their claim. 29 U.S.C. § 1133(2) ("[E]very

employee benefit plan shall … afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."). "[R]eceiving a 'full and fair review' requires knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of the evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." Sandoval v. Aetna Life & Cas. Ins. Co., 967 F.2d 377, 382 (10th Cir. 1992) (internal citations and quotation marks omitted). See also 29 C.F.R. § 2560.503–1(h)(2)(iv) (Jan. 1, 2018) (defining "full and fair review" as one "that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination."). The requirements of a full and fair review are specific. Requiring a plaintiff to address them in detail in a complaint would not be appropriate under Rule 8.

Moreover, Plaintiffs have plausibly alleged at least one instance where, on the face of the complaint, they did not receive a "full and fair review." As Plaintiffs note, Health Net's July 16, 2018 denial rationale was provided by "an unnamed Arizona physician licensed in Obstetrics and Gynecology." (Compl. ¶ 18). Under the ERISA regulations,

> [t]he claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless, [among other requirements], the claims procedures … [p]rovide that, in deciding an appeal of any adverse benefit determination that is <u>based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment [is] not medically necessary or appropriate</u>, the appropriate named fiduciary shall consult with a health care professional <u>who has appropriate training and experience in the field of medicine involved in the medical judgment</u>[.]

29 C.F.R. § 2560.503-1(h)(3)(iii) (Jan. 1, 2018) (emphasis added). I.W. was treated for mental health issues, not problems typically handled by an obstetrician or gynecologist. To the extent

Health Net relied on that physician's evaluation, it may have denied Plaintiffs a full and fair review. At this stage, such allegations are sufficient to avoid dismissal. See, e.g., Lafleur v. Louisiana Health Serv. & Indemn. Co., 563 F.3d 148, 155 (5th Cir. 2009) (finding no "full and fair review" in part because reviewing physician did not have appropriate training and experience in the applicable field of medicine); Okuno v. Reliance Std. Life Ins. Co., 836 F.3d 600, 610–11 (6th Cir. 2016) (same).

For the foregoing reasons, Health Net's request for dismissal of the first cause of action is denied.

**Claim for Violation of MHPAEA**

Plaintiffs' second cause of action alleges that Health Net violated the Mental Health Parity and Addiction Equity Act of 2008 (MHPAEA or "Parity Act"). Defendants argue for dismissal because the Complaint does not contain well-pleaded facts necessary to state a plausible claim for relief and instead presents formulaic recitations of the law and conclusions that have no factual support.

The Parity Act requires a group health plan to "ensure" that its limitations on mental health treatment "are no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan," and that "no separate treatment limitations" apply only to behavioral health benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii). Treatment limitations may be either quantitative or non-quantitative. 29 C.F.R. § 2590.712(a).

To avoid dismissal, Plaintiffs must allege that Defendants imposed a limitation on mental health benefits that is more restrictive than limitations they place on analogous medical/surgical benefits. Plaintiffs do not appear to take issue with express limitations in the Plan's language. The nature of their claim is an "as applied" challenge.

They first assert that the Plan provides analogous benefits in "sub-acute inpatient treatment settings such as skilled nursing facilities, inpatient hospice care, and rehabilitation facilities." (Compl. ¶ 40.) They then contend that Health Net does not exclude or restrict coverage of treatment at those facilities "in the manner Health Net excluded coverage of treatment for I. at Uinta." (Id.) In other words, they say Health Net violated MHPAEA because it "does not require individuals receiving treatment at sub-acute inpatient facilities for medical/surgical conditions to satisfy acute medical necessity criteria in order to receive Plan benefits." (Id. ¶ 41.)

Plaintiffs do not plausibly allege why treatment of mental health claims is not in parity with review of medical/surgical claims. The majority of the Complaint's MHPAEA claim contains conclusory allegations that recite the language of MHPAEA and its implementing regulations. Although Plaintiffs quote Health Net's specific reasons for denying the claim for lack of medical necessity, their only allegation linking Health Net's review to the Plan's treatment of medical/surgical claims (see paragraph 41 of the Complaint) is conclusory. At most, the well-pled factual allegations establish that Health Net applied the wrong criteria when evaluating the medical necessity of I.W.'s care. Without a plausible link to benefit claims in the medical/surgical categories, Plaintiffs do not allege a cause of action under the Parity Act.

As for Plaintiffs' contention that they need discovery before they can articulate the connection, they request permission to conduct a fishing expedition. To accept as fact a suspicion that has no known support is inherently contrary to Rule 8. "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Iqbal, 556 U.S. at 678–79.

For these reasons, the court dismisses Plaintiffs' second cause of action.

## ORDER

Defendants' Motion to Dismiss Plaintiffs' Complaint (ECF No. 17) is GRANTED IN PART AND DENIED IN PART.  Specifically, the court denies the Defendants' request to dismiss the first cause of action, but their request to dismiss the second cause of action is granted.

SO ORDERED this 19th day of May, 2020.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge