Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
BRIAN S. KING PC
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiffs

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| E.W. and I.W.,<br><br>     Plaintiffs,<br><br>vs.<br><br>HEALTH NET LIFE INSURANCE COMPANY, and HEALTH NET OF ARIZONA, INC.<br><br>     Defendants. | MOTION FOR ATTORNEYS' FEES<br><br><br><br>Civil No. 2:19-cv-00499-DBB-DBP |

Plaintiffs-Appellants E.W. and I.W., through counsel, hereby move for their reasonable

attorneys' fees incurred while litigating at the district court and on appeal.

**PROCEDURAL BACKGROUND**

Plaintiffs appealed this Court's decision to dismiss Plaintiffs' second cause of action,

alleging that Health Net had violated the Mental Health Parity and Addiction Equity Act

("MHPAEA") along with the district court's ruling on the merits of the Plaintiffs' first cause of

action, their claim for wrongful denial of ERISA benefits. The Tenth Circuit agreed with

Plaintiffs that this Court wrongly dismissed the MHPAEA cause of action, reversed the decision

on that claim, and remanded the case for further proceedings consistent with that outcome. The

Tenth Circuit affirmed this Court's ruling on the first cause of action involving the ERISA

benefits. Given the success the Plaintiffs had in obtaining reversal of the district court's dismissal

of the MHPAEA claim, Plaintiffs now move the Court for their attorneys' fees in relation to this

case.

**ARGUMENT**

**I.      RELEVANT PROVISIONS OF ERISA PROVIDE FOR AND SUPPORT
         AWARDING FEES TO PLAINTIFFS.**

The relevant statutory provision, 29 U.S.C. § 1132(g)(1), states: "[i]n any action . . . by a

participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's

fee and costs of action to either party." The Supreme Court has ruled that in ERISA cases in

which the claimant achieves "some degree of success on the merits," such as in this case, the

plaintiff may obtain an award of attorney fees under 29 U.S.C. § 1132(g)(1).[1] The Tenth Circuit

has observed that other courts have commonly held this section "permits recovery of attorney's

fees in connection with both trial court litigation and appellate litigation."[2] When considering

such an award, "courts should evaluate 1) the degree of the opposing parties' culpability or bad

faith; 2) the opposing parties' ability to satisfy a fee award; 3) whether a fee award would deter

similar conduct; 4) whether the party requesting fees sought to benefit all plan participants and

beneficiaries or resolve a significant legal question under ERISA; and 5) the relevant merits of

the parties' positions."[3]

Here, the first factor is neutral because Defendants-Appellants Health Net Life Insurance

Company and Health Net of Arizona, Inc. (collectively, "Health Net") initially prevailed in

---

[1] *Hardt v. Reliance Standard Life Ins. Co*, 560 U.S. 242, 255 (2010)
[2] *Stachmus v. Guardian Life Ins. Co.*, 853 Fed. Appx. 268, 274 (10th Cir. 2021) (citation and internal quotation marks omitted).
[3] *Id*. (citation and internal quotation marks omitted).

litigation and Plaintiffs do not contend that they did so with culpability or in bad faith. However, Plaintiffs ultimately prevailed on the question of whether they had sufficiently pled their cause of action contending that Health Net had violated MHPAEA.[4] While this does not demonstrate that Health Net was acting in bad faith, it does demonstrate that Health Net was wrong when it argued that Plaintiffs "fail to state a claim" for a MHPAEA violation.[5] Accordingly, the Court should consider this factor to weigh in the Plaintiffs favor when considering whether to award fees.

Second, "Health Net's ability to satisfy a fee award" weighs in favor of awarding attorneys' fees to Plaintiffs. Plaintiffs do not anticipate Health Net will contend that it would struggle to pay fees.

Third, the question of "whether or not an award of attorney fees against the defendants would deter other insurers and benefit plans from improperly denying benefits to worthy participants" weighs in favor of an award of fees. Health Net initially contended that it could not have violated MHPAEA because it proclaimed its internal medical necessity guidelines represented the "generally accepted standards of medical practice."[6] The Court disagreed and indicated Plaintiffs have presented a well-pled claim that Health Net violated MHPAEA. Awarding fees will send a strong message to insurers that they need to conduct a serious and self-searching MHPAEA analysis and cannot give MHPAEA claims short-shrift at the motion to dismiss stage of proceedings.

---

[4] *See E.W. v. Health Net Life Ins. Co.*, 2023 U.S. App. LEXIS 30879, *39-52 (10th Cir. November 21, 2023) (articulating this decision).
[5] *Id*. at *48.
[6] *See id*. at *48-50.

3

Fourth, while this claim is not brought on behalf of any plan member other than I.W., reminding Health Net that MHPAEA claims are well-pled if they contend Health Net's internal guidelines impose a disparate restriction mental health coverage will have a beneficial effect in this area of law. An award of fees may very well increase the likelihood that future claimants are able to more speedily resolve disputes concerning the parity (or lack thereof) of administrators' decision.

Finally, as to the fifth factor, Plaintiffs prevailed on their goal of reversing the district court's decision to deny their MHPAEA cause of action. The relative merit of the parties' positions clearly weigh in their favor.

## II. THE KING DECLARATION AND SUPPORTING INFORMATION IDENTIFIES REASONABLE HOURLY RATES AND REASONABLE TIME SPENT IN THIS LITIGATION.

The Supreme Court has made clear that the "hybrid lodestar" method of determining the appropriate amount of attorney fees to be awarded is appropriate under ERISA.[7] This requires multiplying the "number of hours reasonably expended on the litigation by a reasonable hourly rate."[8] "Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified."[9]

After deciding the appropriate hourly rate, the Court reviews the billing records submitted by the movant and excludes any amounts that it determines are "excessive, redundant, or otherwise unnecessary."[10] The lodestar figure is presumptively a reasonable fee and upward or downward adjustment of the figure is proper only in rare or exceptional circumstances where

---

[7] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[8] *Id*.at 433.

[9] *Id*. at 435.

[10] *Id*. at 434.

4

there is specific evidence on the record supported by detailed findings that the lodestar is too high or too low.[11]

The setting of a reasonable hourly rate considers the experience, skill, and reputation of the attorney and takes into account the prevailing market rates in the community.[12] The rates charged by Plaintiffs' counsel are identified in the Declaration of Brian S. King ("King Decl.") filed herewith as Exhibit A. Mr. King's rate is $600 per hour.[13] The associate attorney who worked on this case at the appellate level, Tera Peterson, billed her work at $300 per hour.

These hourly rates for the attorneys in the office are reasonable and within the range of rates in the national market involving experienced ERISA claimant's counsel. Mr. King provides his statement in his declaration that the rates for himself and Ms. Peterson are in line with competent attorneys in this specialty of law.[14] Based on this information presented in the King Declaration, the rates charged for Mr. King and Ms. Peterson reflect national standards for individuals representing claimants in these areas of law.

Where the subject matter of the litigation is highly specialized and a limited number of attorneys specialize in the area with even fewer representing claimants on a contingent fee basis, there may be no local community of comparable lawyers from which to draw hourly rates for comparison. In such a case, where specialties draw on federal statutes or bodies of law, the Court may look to circuit-wide or national rates to establish a standard.[15] Specifically, for ERISA as a federal statute, other courts have held that a national rate is appropriate.[16]

---

[11] *Van Gerwen v. Guarantee Mutual Life,* 214 F.3d 1041, 1045 (9th Cir. 2000).
   [12] *Blum v. Stenson,* 465 U.S. 886, 895, n. 11 (1984).
[13] Declaration of Brian S. King, attached as Exhibit A, ¶¶ 11 and 14.
[14] King Decl. ¶¶ 11, 12, and 13.
[15] *Jeffboat, LLC v. Director, Office of Workers' Compensation Programs*, 553 F.3d 487, 491 (7th Cir. 2009).
   [16] *Chesemore v. Alliance Holdings, Inc*, 2014 U.S. Dist. LEXIS 123873, *21 (W.D. Wis.

The King Declaration identifies his qualifications and experience to be awarded an attorney fee at the rate of $600 an hour for his work in this case. Mr. King has extensive experience litigating ERISA benefit claims over the last 25 years. He has practiced in courts across the country and can be said to have a national practice. ERISA involves complex questions of law and fact and requires extensive knowledge and preparation to represent claimants successfully. Few attorneys represent claimants involving this area of law on a regular basis.

As for the number of hours billed by Mr. King's firm, the time sheets attached to the King Declaration provide adequate documentation of the nature of the tasks performed in the case, the time spent on those tasks, and the reasonableness of that time. They total 117.7 for Mr. King and 140.2 for Ms. Peterson. Multiplying the hours by the hourly rates identified in the Declaration of Mr. King totals $112,680 and represents the law firm's time into the case. The detailed information in connection with the law firm's time is attached to the King Declaration.

Dated this 5th day of December, 2023.

/s/ Brian S. King
Attorney for Appellees

**CERTIFICATE OF SERVICE**

---

2014); *Tussey v. ABB, Inc.,* 2012 U.S. Dist. LEXIS 157428, *10-11 (W.D. Mo. 2012), affirmed & reversed in parts, 746 F.3d 327 (8th Cir. 2014) ("It is well established that complex ERISA litigation involves a national standard and special expertise"); *Mogck v. Unum Life Ins. Co.*, 289 F.Supp.2d 1181, 1191 (S.D. Cal. 2003) ("ERISA cases involve a national standard"); *Oldoerp v. Wells Fargo & Co. LTD Plan*, 2014 U.S. Dist. LEXIS 80983, *8-10 (N.D. Cal. 2014)(entertaining evidence of fee rates applying a national rate in awarding fees); *Torgerson v. Unum Life Ins. Co. of America*, 2007 U.S. Dist. LEXIS 9332, *21 (N.D. Iowa 2007)("ERISA cases involve a national standard" hourly rate); and *Dobson v. Hartford Financial Services Group*, Inc., 2002 U.S. Dist. LEXIS 17682, *9 (D. Conn. 2002) (plaintiff's counsel have a "nationwide practice and some degree of special expertise is necessary for complex ERISA litigation").

I hereby certify that a true and correct copy of the foregoing document has been served to all parties registered to receive court notices via the Court's CM/ECF system.

Dated this 5th day of December, 2023.

/s/ Brian S. King